IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| IN THE MATTER OF: | ) | CASE NO. BK15-80074 |
| | ) | |
| LEAFPROOF PRODUCTS, LLC, | ) | CHAPTER 11 |
| | ) | |
| Debtor. | ) | |

## ORDER

Hearing was held in Omaha, Nebraska, on August 17, 2015, on Debtor's counsel's interim application for fees and expenses (Fil. #168), with objections by the United States Trustee (Fil. #190) and the Committee of Unsecured Creditors (Fil. #193). Robert F. Craig appeared for Robert F. Craig P.C. (hereinafter collectively "Applicant"), Jerry L. Jensen appeared for the United States Trustee, Lauren R. Goodman appeared for the Committee of Unsecured Creditors ("Committee"), and Craig A. Knickrehm appeared for First Westroads Bank. The matter was deemed under advisement and Applicant was given the opportunity to submit an amended application. On August 24, 2015, Applicant filed an amended application for fees and expenses (Fil. #226), and the matter is now ready for decision.

### BACKGROUND FACTS

On January 20, 2015, Debtor filed for relief under Chapter 11 of the United States Bankruptcy Code, and the court subsequently approved the employment of Applicant as counsel. On July 8, 2015, Applicant filed the first interim application for fees and expenses requesting a total amount of $143,701.42. The application indicated that Applicant had already received a total of $63,549.09.[1]

The United States Trustee and the Committee both objected to Applicant's interim application. At the hearing, the court required Applicant to file an amended application due to certain obvious errors in the application and the possibility of less obvious additional errors. Applicant was ordered to cure the deficiencies in the current application and to file an amended application. Applicant has now done so,[2] seeking fees in the reduced amount of $111,156.00, less the fees previously paid in the amount of $63,549.00, for a total of additional attorney fees sought of $47,607.00 plus unreimbursed expenses in the amount of $416.00.

The United States Trustee's objection notes that at the time the original interim application was filed, no plan or disclosure statement had been filed and, according to the United States Trustee, there was little likelihood of confirming a plan. The United States Trustee believes that the fees

---

[1]It is unclear whether the correct number is $63,549.09 or $63,549.00 as used in the amended application. For purposes of this order, the number in the amended application will be used.

[2]Rather than directly address potential errors in the time entries, Applicant simply reduced requested fees by a percentage.

requested are excessive and unreasonable. The Committee joined in the United States Trustee's objection and further noted that the amount of fees requested came close to, and perhaps exceeded, any value of Debtor's business.

## *DISCUSSION*

Section 330 of the United States Bankruptcy Code governs an award of compensation to professionals for work performed on behalf of the estate. That section limits the court's ability to award fees to a professional person to "reasonable compensation for actual, necessary services." 11 U.S.C. § 330(a)(1)(A). The bankruptcy court has broad power and discretion to award or deny attorney fees and a duty to examine them for reasonableness. *Walton v. LaBarge (In re Clark)*, 223 F.3d 859, 863 (8th Cir. 2000). The movant bears the burden of proving that he is entitled to compensation under 11 U.S.C. § 330 and Federal Rule of Bankruptcy Procedure 2016(a). *Chamberlain v. Kula (In re Kula)*, 213 B.R. 729, 736 (B.A.P. 8th Cir. 1997). "Whether the compensation sought is reasonable, given the time, nature, extent of the services and the value of the services is always a question of fact for the court." *Id.* at 735 (quoting *In re Jelinek*, 153 B.R. 279, 284 (Bankr. D.N.D. 1993)). In determining the amount of reasonable compensation, the court should consider "whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title[.]" 11 U.S.C. § 330(a)(3)(C).

When calculating an applicant's "reasonable fee" under 11 U.S.C. § 330, the bankruptcy court must start with the lodestar calculation.[3] *Id.* at 739. "[T]he lodestar method of fee calculation is the preferred method by which federal courts should determine reasonable attorney's fees under federal statutes which provide for such fees." *Id.* at 736. When making an award of professional fees, the court must either make an express lodestar calculation or make a finding that the lodestar method is inappropriate under the circumstances. *Id.*

In making the lodestar calculation, the court must make a finding as to whether the number of hours billed were reasonable in light of the complexity of the case, and then multiply that by a reasonable hourly rate for those services. *Id.* at 737. In determining what constitutes a reasonable and proper fee in a given case, judges may rely on their own knowledge of customary rates and experience. *Bachman v. Pelofsky (In re Peterson)*, 251 B.R. 359, 365 (B.A.P. 8th Cir. 2000). Adjustments to the lodestar amount may be made in rare and exceptional circumstances based on the quality of the representation or the results obtained. *Novelly v. Palans (In re Apex Oil Co.)*, 960 F.2d 728, 732 (8th Cir. 1992). For guidance in making this assessment, the court may consider the factors

---

[3]The lodestar amount is the number of hours reasonably expended multiplied by a reasonable hourly rate. *Novelly v. Palans (In re Apex Oil Co.)*, 960 F.2d 728, 730-31 (8th Cir. 1992).

enumerated in *Johnson v. Georgia Highway Exp., Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974),[4] to the extent they are not already accounted for in the lodestar amount. *Kula*, 213 B.R. at 738.

The court need not analyze the time spent on any given task to determine whether it is excessive, but may consider generally whether the nature of the case was routine and whether the fees requested are in line with those typically charged. *Bachman v. Laughlin (In re McKeeman)*, 236 B.R. 667, 672 (B.A.P. 8th Cir. 1999). Fees requested may be reduced on a number of grounds, including a finding that the debtor was billed for unnecessary or duplicative services, *In re AOV Indus., Inc.*, 797 F.2d 1004, 1008 (D.C. Cir. 1986), for tasks that could have been performed by assistants, *Garb v. Marshall (In re Narragansett Clothing Co.)*, 210 B.R. 493, 499 (B.A.P. 1st Cir. 1997), or for time not reasonably expended to benefit the bankruptcy estate. *Advanced Microbial Solutions, L.L.C. v. O'Neal (In re Advanced Microbial Solutions, L.L.C.)*, 306 B.R. 915, 920 (E.D. Tex. 2004).

Here, a strict application of the lodestar analysis would be inappropriate. Applicant's hourly rate of $350.00 seems high for a small business bankruptcy such as this. Further, it appears that Applicant does not have much in the way of administrative assistance (that should be absorbed in Applicant's hourly rate) or inexpensive paralegal services. In addition, the time spent by Applicant is excessive in many ways.

In this case, the fees and expenses had very little to do with the plan and disclosure statement. Instead, most of the time expended by Applicant involved ongoing litigation and disputes with two unsecured creditors of Debtor and who presently control the Committee. In fact, the vast majority of the disputes and time expended in this bankruptcy case involve the efforts by Applicant to obtain compensation for Debtor's principals.

Interestingly, in the disclosure statement Applicant indicates that Debtor "has no going concern value" and that "the liquidation value of the company's assets is highly speculative." The disclosure statement further provides that "[t]he Plan will be implemented through the sale of Debtor's assets." However, there is no indication as to when or how those assets will be sold. The plan, on the other hand, states that it is a "reorganization plan" (as opposed to a liquidating plan) in that it provides for the amortization of the secured lender's claims and states that the means for implementation of the plan will be "through the continuing operations of the Debtor." The plan and disclosure statement are simply not on the same page and are of little value.

---

[4]The *Johnson* factors include: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to the acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and results obtained; (9) the experience, reputation, and ability of the attorney; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

So, $140,000.00 plus in legal fees later, about all that is clear is that Debtor's principals desire to keep getting paid and its secured lender does not wish to be disruptive in the reasonable hope of realizing some value from its collateral.  How Debtor plans to realize value from the collateral is a mystery at this point, and the creditors who were battling the Debtor in state court want to get on with collecting or attempting to collect their debts.  Of course, muddying the water is that Debtor is a small, closely-held limited liability company that is apparently dependent upon its principals for its continued operation.

Frankly, if the intent of Debtor is to sell its assets in an orderly fashion, I am baffled as to why we are eight months into this case without any clear picture of an orderly liquidation plan.  The unsecured creditors, of course, suspect that the answer to that question is so that the principals of Debtor can milk whatever money they can out of the entity until liquidation is forced upon them.  I do not know if that is entirely true, but I also do not know why this case has not already proceeded with an orderly liquidation.

Finally, I note that this particular case seems to be following a pattern that is eerily similar to the pattern I have seen in other Chapter 11 cases filed in this court by Applicant.  That is, extremely high legal fees requested during the first several months of the case, followed by a motion to withdraw.  In connection with that observation, I note for the record that at the hearing on August 17, 2015, Applicant made an oral motion to withdraw when I indicated that I would not be immediately approving the application for fees.  The motion was denied.

Therefore, having considered the facts and circumstances of this case, the details of the fee application and amended fee application filed by Applicant, the substance of the objections filed by the United States Trustee and Committee, and this court's own observations during the course of this case, as well as prior cases involving Applicant, I agree with the objecting parties that the fees requested are excessive and unreasonable.  Trying to put a number on the reasonable portion and the unreasonable portion is difficult, to say the least.  However, from a macro perspective, I note that allowing Applicant to retain the previously paid fees in the amount of $63,549.00, while denying all further fees requested for any work performed through the current date, appears to this court to be the most fair and reasonable allocation of the fees and expenses requested by Applicant.  For this purpose, I note that I have seen very little benefit to the bankruptcy estate (as opposed to the principals of Debtor) during the eight months of this case.  In fact, I cannot pinpoint any benefit other than a delay in the state court litigation with the two main unsecured creditors.

That said, I am also struggling with the tactics of the Committee and the two creditors who control it.  By all accounts, the secured lender is under secured.  It is difficult to see how an orderly liquidation – to which Debtor is certainly entitled – will result in any benefit to those creditors.[5] Perhaps there is more here than meets the eye.

---

[5]I note for the record that the court has not made any rulings regarding valuation.

IT IS, THEREFORE, ORDERED that the interim application for fees and expenses (Fil. #168), as amended (Fil. #226), is hereby approved in the reduced amount of $63,549.00 for fees and expenses through the date of this order.

DATE:   September 1, 2015.

BY THE COURT:

/s/ Thomas L. Saladino
Chief Judge

Notice given by the Court to:
    *Robert F. Craig
    Jerry L. Jensen/United States Trustee
    Lauren R. Goodman
    Craig A. Knickrehm

Movant(*) is responsible for giving notice to other parties if required by rule or statute.